## RAY v. THE STATE.

Under the statute, the names of the witnesses, upon whose evidence an indictment is found, should be noted upon it. But where the witness was not objected to at the trial on that account, the irregularity will be regarded as waived, and will afford no ground for a new trial.

Had the witness been objected to, and the objection overruled by the court, the proceeding should have been made matter of record by a bill of exceptions, in order to make it cause of error.

When the accused is found guilty on the uncorroborated testimony of an accomplice, it affords good cause for a new trial.

An accomplice should not be admitted as a witness without a previous order from the court, made on an application, showing that there is no other person by whom the offense can be proved; that the witness is not more guilty than the person on trial; and that his testimony can be substantially corroborated.

Though a *particeps criminis* is not an incompetent witness, the court should instruct the jury not to convict of felony on his uncorroborated testimony. Such corroboration should be in facts tending to establish the guilt of the accused.

A verdict for larceny should fix the value of the property stolen.

Where the errors below pertain chiefly to a motion for a new trial, the judgment will not be arrested, but a *venire de novo* awarded.

ERROR, *to Henry District Court.*

*H. W. Starr* and *J. C. Hall,* for the plaintiff in error.

*D. Rorer* and *A. Lotspeich,* for the state.

Ray *v.* The State.

*Opinion by* KINNEY, J.  Ray and Burge were jointly indict-
ed for larceny, at the March term, 1848, in Henry county.
Ray pleaded "not guilty," and demurred to the indictment,
which was overruled.  He obtained a separate trial; and at
the same term of the court was tried and convicted, and sen-
tenced to imprisonment, in the penitentiary, for three years.
The defendant then sued out a writ of error to this court, pro-
cured a *supersedeas* to stay the judgment of this court below,
and the case appears before us upon three bills of exceptions
taken on the trial, embodying all the evidence, with the instruc-
tions of the court, which form the basis of the following assign-
ment of errors :

1.  The court below erred in overruling the demurrer of the
defendant below to the said counts in the indictment.

2.  The court below erred in admitting the evidence of
Eurding. to go to the jury, after he had proved himself to have
been the principal felon.

3.  The court erred in deciding that the witness, Eliza Tagg,
should not answer the question, whether there was not a mar-
riage contract between her and witness, Eurding, as set forth
in said exceptions.

4.  The court erred in instructing the jury that it was their
privilege to convict the defendant on the uncorroborated evi-
dence of witness, Eurding ; and that the instructions contained
in the bill of exceptions were not in accordance with law.

5.  The court erred in leaving a discretion to the jury, in
receiving or rejecting the uncorroborated evidence of Eur-
ding.

6.  The court erred in overruling the defendant's motion in
arrest of judgment, and for a new trial.

As a majority of the court are of opinion that the indict-
ment was substantially correct, under our statutes, and con-
sequently the demurrer properly overruled, we will confine our
examination to the other errors assigned, constituting, as they
do, the most important features of the case, and upon which
the court have no difficulty in coming to a unanimous conclu-
sion.

We will, however, as preliminary to the consideration of the main questions presented by the assignment of errors, notice the point made by counsel, that the court should have granted a new trial, because the name of Eurding was not endorsed on the indictment.

The statute makes it the duty of the grand jury, in all cases where a true bill is returned into court, to note thereon the name or names of the witnesses upon whose evidence the same was found. *Rev. Stat.* p. 297, § 3.

We think a compliance with this provision of the statute ought in all instances to be regarded.

To protect the innocent, and punish the guilty, are the two great objects to be kept in view in the administration of criminal jurisprudence. While, upon the one hand, the law will hold the offender to a strict accountability, it should, upon the other, extend to the accused all possible facilities for a fair, full, and impartial trial. And as the accused is always presumed innocent until convicted, no course should be adopted that would deprive him of that fair trial so humanely secured to him by law.

The names of the witnesses upon the indictment will inform him of the authors of the prosecution, and thus enable him to prepare for his defense. For his benefit, the crime charged in the indictment is required to be clearly and distinctly stated; that he may know with certainty the nature and character of the offense; and that he may not be taken by surprise on the trial, it is quite as necessary that he should know who the witnesses are by whom it is expected the indictment is to be sustained. Hence the necessity of an observance by the grand jury of this plain and salutary provision of the statute.

In this case, however, it does not appear that any objections were made to Eurding testifying, in consequence of his name not having been endorsed on the back of the indictment. If the defendant had objected, and the objection been overruled, it should have been entered in the bill of exceptions, and might have then been good cause of error. But after his testimony

had gone to the jury without objection, it is not on that account sufficient cause to authorize the court in granting a new trial. *McKinny* v. *The People*, 2 Gil. 552.

But the assignment of errors, to which the attention of the court has been particularly directed by the argument of counsel is, that the court erred in leaving it discretionary with the jury to convict upon the uncorroborated testimony of Eurding, he being the principal felon. As it is highly important to settle the practice correctly in relation to the testimony of accomplices, we will examine the subject at some length, without being strictly confined to the instructions given.

From the testimony of Eurding, as set out in the bill of exceptions, it appears that he testified that he stole the coin, pieces of gold, bank notes, &c., named in the indictment against Ray; and that the defendant was his accomplice. That he, the defendant, and one Burge had agreed together to steal money. Ray was to find out where the money was that could be taken, and that he and Burge were to steal it. Defendant had informed him about the place, amount, and other circumstances in relation to the money stolen; and on the evening the money was stolen they had met, and the defendant had left to go to Jink's grocery near by, so that he could prove that he was not present.

To corroborate this testimony, Mrs. Eliza Tagg was sworn, who testified that Burge said, in a conversation with Ray, a day or two after the money was stolen, that Gilchrist would not get his money again; and that Ray said he would have his share of it.

This is the only testimony materially corroborative of that given by Eurding. She also states that she was living separate and apart from her husband; that Eurding was in the habit of visting her, and that they were upon intimate terms, evidently disclosing the fact that she was the adulterous paramour of Eurding. She had also been arrested as an accomplice in the crime, and not only appears before the court under most unfavorable and suspicious circumstances, in a character which would have authorized the court in regarding her testi-

mony with great disfavor, but she was, also, as appears to us from the record, successfully impeached.

Eurding's testimony, which was of the lowest grade, emanating from a source, of which it has been said, the law confesses its weakness by resorting to testimony so foul and corrupt,—coming from a witness whose own confessions stamp him with disgrace and infamy, standing as he does in the halls of justice the accused and acknowledged perpetrator of the crime— is attempted to be counteracted by a witness but one step less in degradation than the felon himself.

Remaining, as the testimony of Eurding did, uncorroborated, it becomes important to inquire, whether a conviction upon such testimony, with slight, and, as we think, immaterial corroborating circumstances, ought not to have entitled the defendant to a new trial.

The rule appears to have prevailed in England, that an accomplice could not be permitted to testify without first obtaining an order from the court. Crim. Cir. Court Cases, p. 51. The reason of this rule is, that courts will not permit a resort to testimony so foul, unless the exigencies of the case imperiously require it; and even then they will exercise discretion with great caution, unless the witness can be corroborated with other testimony. Besides, an implied pardon is held out to the witness, which ought not to be done, unless justice can be promoted by a punishment of the greater offender by extending a pardon to the one less tainted with guilt. *The People* v. *Whipple*, 9 Cow. 709. We think the safer practice is, not to permit an accomplice to be brought into court as a witness without an order from the court for that purpose, and that the application ought to show : 1. That there is no other witness by whom the offense can be proved ; 2. That the witness is not more guilty than the person on trial ; and 3. That the testimony can be substantially corroborated.

Upon such application, if the court think that public justice can be promoted, crime suppressed, and the guilty punished, by extending a merciful hand to one who confesses his guilt, we think they may legally exercise their discretion by permit-

Ray *v.* The State.

ting the accomplice to be produced as a witness. In the case above cited, of *The People* v. *Whipple,* this question underwent an able examination.

An effort was made to introduce Strang, who had been convicted as an accomplice, as a witness against the prisoner. The motion was denied by the court, principally upon the ground that an implied promise of pardon or of judicial recommendation to executive favor would be the result of permitting him to testify. And as Strang appeared to have been an actor in the guilty drama for which the prisoner had been indicted, the court would not permit him to testify. And the learned judge says: " We are satisfied, both upon principle and authority, that Strang, standing before us convicted as an accomplice with the prisoner, can only be admitted to testify against her at the discretion of the court ; and from the facts and circumstances of the case, we are as clear that it would be an improper exercise of that discretion to admit him."

We think it clear that the accomplice, either before or after conviction, ought not to be permitted to testify without permission from the court. And when so admitted, it does not follow, as a consequence, that his testimony, of itself, is sufficient to convict.

It is a well-settled rule of evidence, that a *particeps criminis,* notwithstanding the turpitude of his conduct, is not on that account an incompetent witness ; but the judges in their discretion will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration. 1 Greenl. Ev. 426.

Judges, observes Lord Ellenborough, in their discretion will advise a jury not to believe an accomplice, unless he is confirmed, or only so far as he is confirmed ; but if he is believed, his testimony is unquestionably sufficient to establish the fact he deposes to. Roscoe's Crim. Ev. 143. Although, in England, a conviction upon the uncorroborated testimony of an accomplice may be legal, yet the courts, in the exercise of sound discretion, as appears from all the authorities, will direct

the jury not to convict upon such testimony. As has been said, they can be used as witnesses in particular cases, but that in a regular system of administrative justice, they are liable to great objections. " The law," says one of the most useful writers on criminal jurisprudence, " confesses its weakness, by calling in the aid of those by whom it has been broken. It offers a premium to treachery, and destroys the last virtue that clings to the degraded transgressor." Russell on Crime, p. 67.

In the case of the *United States* v. *Jones*, 2 Wheeler's Cr. Cas. 451, the court decide that although competency may be restored by pardon, after the witness had served out his time in the state's prison, yet no credit is due to him unless he is corroborated by others, or the circumstances of the case.

In England, the courts, in some instances, have regarded the testimony of accomplices with some apparent favor. But in a country like ours, where justice is administered without fear or favor ; where the high and the low, the rich and the poor, stand upon the same equality in courts of justice; where life and human liberty are guarded and protected by the government and laws with great tenacity ; we know of no good reason why they should be jeopardized and destroyed upon the uncorroborated testimony of an acknowledged felon. Public feeling or judicial necessity does not require so wanton a sacrifice of these rights, so wisely secured to every citizen in the administration of justice. And yet such would be the fearful consequences, if conviction could be procured upon the uncorroborated testimony of an accomplice. Such testimony, standing isolated and alone, contaminated by its own corruption, the court ought to instruct the jury, is not sufficient to convict. 1 Greenl. Ev. 427 ; Roscoe's Crim. Ev. 143 ; *Commonwealth* v. *Bosworth*, 22 Pick. 399.

But the testimony of the accomplice must not only be corroborated, but the corroboration ought to be as to some fact which goes to prove the offense charged against the prisoner. 2 Russell on Crime, 922 ; 2 Hawkins' Pleas of the Crown, 603 ; 1 Greenl. Ev. 427.

Ray *v*. The State.

In Farly's case, in charging the jury, Lord Abringer said, "I am strongly inclined to think that you will not consider the corroboration in this case sufficient. No one can hear the case without entertaining a suspicion of the prisoner's guilt; but the rules of law must be applied to all men alike. It is a practice which deserves all the reverence of law, that judges have uniformly told juries that they ought not to pay any respect to the testimony of an accomplice, unless the testimony is corroborated in some material circumstance." 2 Russell on Crime, p. 963.

In the case of *The Commonwealth* v. *Bosworth*, 22 Pick. 399, the court awarded a new trial upon the ground, that although the witness was corroborated in some even material facts, yet the corroboration was not sufficient. Judge Morton lays down the rule to be, that the corroborative evidence must relate to some portion of the testimony which is material to the issue.

To prove that the accomplice had told the truth in relation to irrelevant and immaterial matters which are known to everybody, would have no tendency to confirm his testimony, asserting the guilt of the party on trial. The learned judge also states that the courts consider it their duty to advise a jury to acquit, when there is no evidence other than the uncorroborated testimony of an accomplice.

From these authorities, as well as from a careful examination of all to which we have had access upon this subject, we think we are safe in laying down the following rules:

1. That the court ought not to permit an accomplice to be sworn, without a previous application for that purpose.

2. That, as an accomplice, he stands before the court and jury in the character of an impeached witness, and as such his testimony requires confirmation.

3. That the confirmation must be in relation to some material fact about which he has testified, involving the prisoner's guilt.

4. That unless the accomplice is so corroborated, it is the

duty of the court to advise the jury that his testimony is not entitled to credit or belief.

In this case the court instructed the jury, that whether the testimony of Eurding was sufficient, or insufficient, to establish the guilt of the defendant, was for the consideration of the jury; but that in the opinion of the court, the jury ought not to convict the defendant upon the uncorroborated testimony of Eurding. We think, if the testimony was not corroborated, the court should have told the jury that they should disregard it entirely; but especially should the court have granted a new trial, on a conviction on such testimony.

Another error assigned is, that the jury ought to have found the value of the property stolen.

The criminal statute of Iowa has drawn a marked distinction between larceny and petit larceny. When a person steals twenty-five dollars, or upwards, it is a larceny for which he can be punished by imprisonment in the penitentiary; a less amount will only subject him to imprisonment in the county jail, &c. The first is denominated larceny, and the latter petit larceny. As the verdict in this case was a general one of guilty, without fixing the value of the property, it does not necessarily follow that the defendant is guilty of having stolen twenty-five dollars, or upwards; nor does it necessarily follow that the jury so intended it. It is well settled, that under an indictment for larceny, the jury may find the defendant guilty of stealing a part, or the whole, of the money or property laid in the indictment. On the indictment against Ray, the jury could have convicted him for having stolen an amount which would only have subjected him to imprisonment in the common jail, and there is nothing in the verdict to show but that such was the case.

The verdict should have fixed the value of the property stolen, that the court might have known with certainty, under which offense the defendant had been convicted, as without such finding under the statute providing the punishment for larceny, the court could not well pass the sentence. *Highland* v. *The People*, 1 Scam. 392. As this case comes before us upon the

ruling of the court upon the motion to arrest, and for a new trial, we will not arrest the judgment, but avail ourselves of the discretion with which we have been clothed by the statute.

The statute provides "that the supreme court shall have power to direct a new trial, discharge the defendant, pass sentence, or remit the proceedings to the district court, with directions to proceed and render judgment." *Rev. Stat.* p. 156, § 75.

From a full and careful examination of this case, deeply impressed with its importance to the defendant, who is under a sentence consigning him to disgrace and infamy, convicted, as he has been, upon the testimony of one who acknowledges his own crime and corruption,—recollecting that it is one of the boasted principles by which the character of our criminal jurisprudence is said to be marked, that if there are any doubts, that the criminal shall be entitled to the benefit thereof,—and at the same time, keeping steadily in view the necessity of punishing all violation in the criminal law, we cannot come to any other conclusion, than that principles of law, of humanity, and justice demand for the defendant a new trial.

We think the court erred in overruling defendant's motion for a new trial. A *venire de novo* is awarded, and the plaintiff in error, Henry Ray, ordered to appear on the 1st day of the next term of the district court of Henry county, for trial.

Judgment reversed.