**STATE of Iowa, Appellee,**

v.

**Murray Lee DOSS, Appellant.**

**No. 83–477.**

Supreme Court of Iowa.

Sept. 19, 1984.

Michael M. Phelan of Johnson, Phelan &
Skewes, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P.
Weeg and Richard A. Williams, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

A Lee County jury found defendant Murray Lee Doss guilty of first-degree murder on the theory of aiding and abetting, a violation of sections 707.1 and 707.2 of the Code. The defendant has appealed his conviction, and we now affirm.

The crucial events occurred September 2, 1981, during a prison riot at the Iowa State Penitentiary at Fort Madison. When authorities regained control of the prison in the late evening hours of September 2, they found the body of inmate Gary Tyson in a storage room attached to the prison kitchen. Tyson had been stabbed nine times in the neck, nine times in the left side of the chest, three times in the left side of the back, and once in the left hand. A makeshift knife was still protruding from Tyson's neck.

Evidence produced at trial would permit the jury to find the following facts. Tyson was a member of a prison gang known as the "Almighty Vice Lords." Prison authorities believed this gang played a part in the May 1981 murder of prison inmate Allen Lewis. During the murder investigation, a number of Vice Lords were placed in "segregation" (locked status) in Cellblock 20. Among them were the defendant, Gary Tyson, and the undisputed leader of the gang, Allen Langley. Defendant Doss was a Vice Lord general, the highest rank achievable in that organization within the penitentiary.

Tyson's relations with the Vice Lords began to deteriorate when other gang members concluded he was "going State's witness" in the Lewis murder investigation. Tyson feared for his life. Other inmates believed Tyson's life was in danger.

On the evening of September 2, rioting inmates released the prisoners confined in Cellblock 20. Wesley Betts, a Vice Lord who had been confined in Cellblock 20, took inmate Tony Baker to an office on C range of Cellblock 20. They were there about thirty seconds when Allen Langley entered and ordered Baker to leave because the Vice Lords needed the office for a meeting. As Baker left the office, he saw a group of Vice Lords, the defendant among them, walking toward the office. When Baker was below C range, he looked up through the grating toward the office. The Vice Lords had disappeared.

At the meeting Langley told the assembled Vice Lords that the time had come to "take Tyson out" and "deal with Tyson." As the brief meeting ended, Langley ordered the Vice Lords to find Tyson and bring him to the prison kitchen. Vice Lord Wesley Betts testified that Doss attended this meeting. Betts expressed some uncertainty whether Doss heard all of Langley's statements.

The Vice Lords then moved to the prison kitchen, congregating in the receiving room and storage room. At trial Vice Lords Larry Currington, Wesley Betts and Robert Taylor, under a grant of immunity, admitted they were in the kitchen area. They testified Allen Langley and Doss were also present. Inmate Mark Balance saw Doss standing in a group of Vice Lords outside the kitchen shortly before the time of the murder. Vice Lord Terry Wilson testified he was stopped when he attempted to enter the kitchen. He looked in, saw the defendant and others and left the area, aware that a murder was being plotted.

The Vice Lords withdrew from the receiving room into the storage room, taking Tyson with them. Langley ordered the others to "move on him." Tyson was grabbed. A wrestling match ensued. When Langley ordered the Vice Lords to hold Tyson down, Taylor and others complied. Langley then stabbed Tyson in the chest numerous times. When he finished, Langley ordered Betts to "finish him off" and Betts stabbed Tyson in the back and

neck, leaving the knife buried to its hilt in Tyson's neck. The defendant's position during the murder is disputed. Currington placed defendant outside the storage room in the receiving room "standing post" or "watch." Betts placed Doss inside the storage room while Tyson was being stabbed. Taylor testified that Doss helped grab Tyson and take him to the floor.

July 7, 1982, the grand jury for Lee County indicted Doss for committing, or aiding and abetting the commission of, first-degree murder. Attached to the indictment were more than fifty pages of grand jury minutes.

July 27 Doss made two motions: One to dismiss the indictment, the other for a bill of particulars. The motion to dismiss was based on the alleged failure of the indictment to establish a prima facie case. Trial court denied the motion to dismiss and granted the motion for a bill of particulars.

September 23 Doss again moved to dismiss, and for a supplemental bill of particulars. Trial court denied both motions.

Doss made a motion for judgment of acquittal at the close of State's evidence, claiming the State had (1) failed to show his guilty knowledge, a prerequisite for a conviction on a theory of aiding and abetting; and (2) failed to corroborate damaging testimony by accomplices to the murder. Trial court denied the motion. When Doss renewed his motion for acquittal at the close of all the evidence, it again was denied.

Doss advances three contentions on appeal. He asserts trial court erred in denying his (1) motions for a judgment of acquittal, (2) July 27 motion to dismiss as well as his September 23 application for a supplemental bill of particulars and motion to dismiss, and (3) objection and proffered amendment to jury instruction number 11. Doss' post-trial motions for a new trial and motion in arrest of judgment were grounded on the three alleged errors identified above and we do not consider those mo-

tions separately. We discuss each contention in the following divisions and provide more facts where necessary.

I. Doss claims trial court erred when it overruled his motions for a judgment of acquittal. He argues he was entitled to a judgment of acquittal because the evidence was insufficient to generate a jury question in two ways: First, there was insufficient evidence of Doss' knowledge of the Almighty Vice Lords' plan to murder Tyson; and second, there was insufficient corroboration of the testimony of the State's three chief witnesses, all of them accomplices to the murder.

A. In reviewing questions of the sufficiency of evidence to generate a jury question, we apply a deferential standard:

When sufficiency of the evidence is challenged, as it was here by a motion for directed verdict, we review the evidence in the light most favorable to the state. The evidence must be such that, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt. All legitimate inferences arising reasonably and fairly from the evidence may be indulged in to support the verdict. A jury verdict is binding on us if there is substantial evidence to support it. By "substantial evidence" we mean evidence which could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.

*State v. Mulder,* 313 N.W.2d 885, 888 (Iowa 1981), *cert. denied,* 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982) (citations omitted); *see also State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984).

The State's theory was that Doss was guilty of first-degree murder because he aided and abetted his fellow Vice Lords in murdering Tyson. In Iowa a person who aids and abets is charged, tried and punished as a principal. Iowa Code § 703.1 (1983). A defendant may not be convicted of a crime upon the theory of aiding and abetting unless there is sufficient evidence to show he assented to or approved of the

criminal act either by actively participating in it or by encouraging it *prior to* or *at the time of* its commission. "Knowledge is essential; however, neither knowledge nor presence at the scene of the crime is sufficient to prove aiding and abetting." *State v. Barnes*, 204 N.W.2d 827, 828 (Iowa 1972). A defendant's participation in the crime as an aider and abettor may be proven by circumstantial evidence. *Id.* Our rule used to be that if circumstantial evidence was used to prove aiding and abetting, the evidence had to pass the test of being not only consistent with defendant's guilt, but inconsistent with any rational hypothesis of his innocence. *Id.* (quoting *State v. Patman*, 189 N.W.2d 620, 622 (Iowa 1971)). We jettisoned that rule in *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979). For purposes of proving guilt beyond a reasonable doubt, circumstantial evidence is as probative as direct evidence. *Id.* at 205; *Mulder*, 313 N.W.2d at 888.

■ The trial produced no direct evidence of defendant's knowledge of the Vice Lords' murder plan. There was, however, considerable circumstantial evidence. We review that evidence in the light most favorable to the State, indulging all reasonable inferences in order to determine whether it supports a finding of guilt beyond a reasonable doubt.

The evidence establishes that several Vice Lords, including their apparent leader Allen Langley, suspected Tyson of going State's evidence in the Allen Lewis murder. Tyson feared for his life. Other inmates who were not even members of the Vice Lords gang expected the Vice Lords to silence Tyson by killing him. The jury might have inferred from these facts that it was a matter of common knowledge among the Vice Lords that Tyson was to be silenced as soon as an opportunity arose and that Doss, by virtue of his high position in the organization, knew Tyson's life was in danger.

There also was testimony that placed Doss at the Cellblock 20 meeting at which Langley announced the time had come to "take Tyson out" and "deal with Tyson."

At the close of the meeting, Langley ordered his fellow Vice Lords to find Tyson. State's witness Betts, who was present at the meeting, testified that there was no doubt in his mind that Langley's orders were to murder Tyson. Though there is some question as to whether Doss heard all of Langley's statements, the jury would have been justified in inferring from Doss' presence at the meeting that he understood the plan to do away with Tyson that evening.

There was ample testimony that Doss was present at the scene of the murder. Taylor testified Doss helped take Tyson to the floor. The jury would have been justified in inferring from this evidence that Doss assented to the murder by actively participating in or encouraging it.

■ Viewing the evidence as a whole, and in a light most favorable to the State, we find that a reasonable juror could have concluded that Doss had sufficient knowledge of the plan to murder Tyson to justify convicting him on the theory of aiding and abetting.

Doss places great reliance on our statement in *Barnes* that circumstantial evidence of guilt must be inconsistent with any rational hypothesis of defendant's innocence. *Barnes*, 204 N.W.2d at 828. To this end, Doss advances several hypotheses to avoid the seemingly damaging testimony adduced at trial. As we pointed out above, the test of circumstantial evidence set out in *Barnes* is no longer the law in this state. *See O'Connell*, 275 N.W.2d at 204–05. There was no error in the jury's giving the same weight to circumstantial evidence of defendant's knowledge as it would have given to direct evidence.

B. Doss also asserts there was insufficient corroboration of the testimony of the State's three chief witnesses. This argument implicates Iowa Rule of Criminal Procedure 20(3). That rule states:

*Corroboration of accomplice or person solicited.* A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commis-

sion of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The dispute focuses on the testimony of three corroborating witnesses—Balance, Baker and Wilson. Doss argues that Wilson was, as a matter of law, an accomplice and therefore could not corroborate the testimony of conceded accomplices Betts, Currington and Taylor. Baker and Balance alone, Doss argues, did not supply sufficient corroboration. The State, on the other hand, contends Wilson was not an accomplice. The trial court considered the question one of fact and submitted it to the jury. We first explore whether trial court erred in this respect.

■ In *State v. Johnson*, 318 N.W.2d 417, 440 (Iowa), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982) (quoting *State v. Jennings*, 195 N.W.2d 351, 356–57 (Iowa 1972)), we stated:

> An accomplice is a person who willfully unites in, or is in some way concerned in the commission of a crime. The general rule for determining whether a witness is an accomplice is if he could be charged with and convicted of the specific offense for which an accused is on trial.

> But something more than mere knowledge that a crime is contemplated, or mere personal presence at the time and place where committed, must be shown in order to make one an accomplice. And it must be established by a preponderance of the evidence that a witness was in fact an accomplice.

The question whether a particular witness is an accomplice is a matter of law for the court when the facts are not disputed or susceptible to different inferences; when the facts are disputed, the question is one of fact for the jury. *State v. Losee*, 354 N.W.2d 239, 242 (Iowa 1984); *State v. Sallis*, 238 N.W.2d 799, 802 (Iowa 1976).

In support of his contention that Wilson was an accomplice as a matter of law, Doss relies on the following facts: Wilson was a general in the Vice Lords, he knew of Allen Lewis' death, he knew Tyson was going to be murdered, he was placed by Currington at the murder scene at the time of the murder, he admitted being at the murder scene prior to the murder, he did not want to be indicted for first-degree murder, he was given immunity by the State, and Tyson owed him money.

■ None of these facts show anything more than Wilson's knowledge that a crime was contemplated, with the exception of Currington's testimony, which placed Wilson in the storage room at the time of the murder. Betts testified that Wilson was not in the storage room at that time. Taylor did not include Wilson in his list of those in the storage room. Wilson testified he was near the scene sometime before the murder. Because the facts were in dispute and susceptible to different inferences, Wilson's status as an accomplice was properly submitted to the jury.

The defendant argues that, regardless of Wilson's status, there was insufficient corroboration.

■ Corroboration has been a part of the common law of Iowa since 1848, *see Ray v. State*, 1 Greene 316, 320 (Iowa 1848), and has its roots in English common law. *Id.* at 320. The requirement of corroboration is designed to eliminate the suspicion aroused by an accomplice's testimony. Note, *Immunity Given to the Accomplice Witness*, 21 Drake L.Rev. 331, 333 (1972). Corroboration need not be strong. *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976). Any corroborative evidence tending to connect the defendant to the commission of the crime supports the credibility of the accomplice and is sufficient. *Id.* Corroborative evidence need not confirm every material fact testified to by an accomplice. *State v. Aldape*, 307 N.W.2d 32, 41 (Iowa 1981). Nor need it confirm all the elements of the crime charged. *State v. Cuevas*, 282 N.W.2d 74, 78 (Iowa 1979); *see also State v. Martin*, 274 N.W.2d 348, 350 (Iowa 1979). The only requirement is that the accomplice's testimony be supported in some material fact tending to connect the defendant to the crime charged. *Aldape*, 307 N.W.2d at 41; *Cuevas*, 282 N.W.2d at 78; *State v. Cuevas*, 281 N.W.2d 627, 630

(Iowa 1979); *Vesey*, 241 N.W.2d at 890. The existence of corroborative evidence is a question of law for the court, but its sufficiency is a question of fact for the jury. *Vesey*, 241 N.W.2d at 890.

▆ We hold trial court did not err in finding corroborative testimony existed in this case. Baker testified he saw a group of Vice Lords, Doss among them, moving toward the office in Cellblock 20 where Langley ordered Tyson "taken out." Balance testified he observed Doss among a group of Vice Lords standing near the kitchen before the murder. Wilson testified he saw Doss at the crime scene shortly before Tyson's murder. The testimony of these three witnesses corroborated the testimony of Betts, Currington and Taylor that Doss was present at the meeting in which Langley ordered Tyson "taken out," and that he was present when Tyson was killed. The sufficiency of this corroboration was a question properly left to the jury.

II. Doss' second assignment of error contains three distinct parts. Defendant argues the trial court erred in overruling his (1) July 27 motion to dismiss the indictment, (2) September 23 application for a supplemental bill of particulars, and (3) September 23 motion to dismiss the indictment.

▆ Doss argues trial court erred in overruling his July 27 motion to dismiss the indictment because the grand jury returned the indictment contrary to the provisions of Iowa Rule of Criminal Procedure 4(3).[1] Since the indictment and minutes would not warrant a conviction if unexplained, the defendant asserts the indictment should never have been returned in the first place and the trial court should have sustained a motion to dismiss it. The defendant in

1. Rule 4(3) states:
   An indictment should be found when all the evidence, taken together, is such as in the judgment of the grand jury, if unexplained, would warrant a conviction by the trial jury; otherwise it shall not.

2. Rule 10(6)(a) provides:
   If it appears from the bill of particulars furnished pursuant to this rule that the particulars

*State v. Graham*, 291 N.W.2d 345, 349–50 (Iowa 1980), made the same argument with regard to a county attorney's information. We held that a motion to dismiss an information was governed by rule 10(6)(a) and (c), not rule 4(3). *Id.* The rule is the same for a motion to dismiss an indictment. A motion that merely challenges the sufficiency of the evidence supporting an indictment is not a ground for setting aside an indictment. *Graham*, 291 N.W.2d at 349.

The defendant also argues the trial court erred in overruling his July 27 motion to dismiss the indictment under rules 10(6) and (7). The controlling rule is 10(6)(a).[2] At the time defendant made the motions, no bill of particulars had been issued to him. We have held a bill of particulars is a prerequisite to a motion to dismiss the indictment under rule 10(6)(a). *State v. Ridout*, 346 N.W.2d 837, 838 (Iowa 1984); *State v. Wilt*, 333 N.W.2d 457, 460 (Iowa 1983); *Graham*, 291 N.W.2d at 350. Trial court correctly overruled Doss' motion to dismiss.

September 23, 1982, Doss moved for a supplemental bill of particulars. The court denied the motion because, when read with the minutes attached to notices of additional testimony, the indictment was specific enough to apprise Doss of the charge against him. Doss assigns the denial of his motion as error.

▆ A defendant does not have an absolute right to a bill of particulars; trial courts have discretion to determine the adequacy of an indictment in light of minutes attached. *State v. Lass*, 228 N.W.2d 758, 765 (Iowa 1975). We will not disturb a trial court's denial of a motion for a bill of particulars in the absence of an abuse of discretion. *State v. Marti*, 290 N.W.2d 570, 576 (Iowa 1980).

stated do not constitute the offense charged in the indictment or information, or that the defendant did not commit that offense or that a prosecution for that offense is barred by the statute of limitations, the court may and on motion of defendant shall dismiss the indictment or information unless the prosecuting attorney shall furnish another bill of particulars which so states the particulars as to cure the defect.

■ We find no abuse of discretion here. In passing on Doss' motion, the trial court used the correct test; that is, whether the indictment was specific enough to apprise Doss of the charge against him. Trial court was free to read the indictment in conjunction with the minutes of additional testimony to determine the indictment's completeness. *See id.* ("The weight of authority holds that if an accused has been fully advised of the particulars of the offense by the State, although not necessarily by solely the indictment, the refusal of a bill of particulars does not constitute error. The employment of means other than a bill of particulars for informing the defendant may make a bill of particulars unnecessary."). It is also important that Doss does not claim he was prejudiced by trial court's ruling. *See id.*

September 23, 1982, Doss filed a second motion to dismiss the indictment, which was overruled by the court. He assigns this ruling as error. Doss concedes his motion was controlled by rule 10(6)(a), but does not specify which of the three grounds set out in that rule provides the ground for his motion to dismiss.

■ In considering a motion to dismiss an indictment, the trial court is to accept as true the facts set out in the bill of particulars and indictment. *Marti*, 290 N.W.2d at 578. If those facts charge a crime as a matter of law, the indictment is upheld. *Id.* In this case the bill alleged that Doss was present at the meeting in which Tyson's murder was planned, he actively participated in Tyson's murder, and he encouraged others to commit the murder.

We find no error in trial court's denial of Doss' motion to dismiss under rule 10(6)(a). Doss satisfies none of the three grounds for dismissal set out in rule 10(6)(a). The statute of limitations did not bar the prosecution. The bill of particulars did not show that Doss did not commit the offense charged in the indictment. Nor did the particulars in the bill constitute a different crime than that charged. This exhausts the permissible grounds for dismissal under rule 10(6)(a).

III. Over defendant's objection, the trial court used Uniform Jury Instruction number 201 in defining "accomplice" for the jury. Doss requested the court to include in the definition the statement that "the general rule for determining whether a witness is an accomplice is if he could be charged with and convicted of the specific offense for which an accused is on trial." The proposed enlargement of the instruction contains language found in several Iowa decisions. *See Johnson*, 318 N.W.2d at 440; *Sallis*, 238 N.W.2d at 802; *Jennings*, 195 N.W.2d at 356. The definition of accomplice contained in Uniform Jury Instruction number 201 provides:

> The term "accomplice" refers to and includes all persons who knowingly and voluntarily cooperate or aid and abet in the commission of the offense with which the defendant is charged.

In a different instruction, trial court properly defined "aiding and abetting." Doss argues we should find error in trial court's use of Uniform Jury Instruction number 201 because the definition of accomplice he offered was more precise and complete.

■ "We disapprove Uniform Instructions reluctantly." *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981). Further, a trial court is not required to instruct in the language of requested instructions so long as the topic is covered by the court's own instructions. *State v. Horn*, 282 N.W.2d 717, 730 (Iowa 1979).

■ The definition of accomplice requested by Doss may be clearer and more easily followed by a jury. That, however, is not the issue. The court's instructions covered the topic adequately and there was no error in refusing Doss' proffered addition. *Id.*

Doss' assigned errors are without merit. The district court judgment is affirmed. AFFIRMED.