# IN THE COURT OF APPEALS OF IOWA

No. 23-1348
Filed August 7, 2024

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**MATTHEW LOUIS SAMPSON,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Scott County, Michael Motto, Judge.


 Defendant appeals the district court's denial of his motion to suppress.
**AFFIRMED.**


 Ryan M. Beckenbaugh of Beckenbaugh Law, P.C., Davenport, for appellant.

 Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


 Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Matthew Sampson appeals the district court's denial of his motion to suppress evidence. He challenges the evidence obtained following a stop for operating an off-road vehicle (UTV)[1] that resulted in Sampson's arrest for operating while intoxicated (OWI). Sampson argues that the arresting officer did not have probable cause or reasonable suspicion for the stop under a city ordinance because of the doctrine of preemption. Alternatively, he argues the rule of lenity supports suppression.

## I.     Background Facts and Prior Proceedings

Law enforcement in Blue Grass executed a stop of Sampson during the early morning hours of July 3, 2022. Sampson was operating a golf cart. At the time of the stop, Blue Grass city ordinances prohibited the driving of a UTV on city roads between sunset and sunrise. City ordinances also required that all UTVs driven on city streets be equipped with a bicycle safety flag. When Sampson was stopped between sunset and sunrise, his UTV did not have a safety flag. And because the officer believed that Sampson was intoxicated, Sampson was arrested for OWI.

---

[1] The relevant laws use differing terms. The Blue Grass City ordinances discuss both all-terrain vehicles (ATVs) and utility task vehicles (UTVs), while the Iowa Code sections deal with all-terrain vehicles and off-road utility vehicles. Under Iowa Code Chapter 321I (2022), a golf cart is an "off-road utility vehicle," but not an "all-terrain vehicle." Iowa Code § 321I.1(1)(a), (17). Despite this distinction, section 321I.1(17)(b) also makes clear "[t]he operator of an off-road utility vehicle is subject to provisions governing the operation of all-terrain vehicles in section 321.234A, this chapter, and administrative rules." For consistency, we use the term "UTV" throughout.

The State charged Sampson by trial information with OWI, second offense. Sampson moved to suppress evidence of the stop. He argued that state law preempted the city ordinances on UTVs and, consequently, the officer lacked probable cause to initiate a stop. Sampson highlighted a recent publication, *Blue Grass Bugle*, a city newsletter, which stated that, because of new state statutes, UTVs could be operated "day or night." Following the hearing, the district court denied the suppression motion. Sampson then entered a conditional guilty plea to OWI, second offense.[2] Sampson now appeals the denial of his motion to suppress.

## II.    Standard of Review

"A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction and is thus reviewable for correction of errors at law." *City of Davenport v. Seymour*, 755 N.W.2d 533, 537 (Iowa 2008).

## III.    Analysis

Sampson asserts the district court erred in denying his motion to suppress because the Blue Grass ordinances relied on for his stop were preempted by a

---

[2] Iowa Code section 814.6(3), which became effective July 1, 2023, permits conditional guilty pleas. Section 814.6(3) reads: an "appellate court shall have jurisdiction over only conditional guilty pleas that comply with this section and when the appellate adjudication of the reserved issue is in the interest of justice." Sampson entered his guilty plea on August 18. Sampson's plea noted that it was a conditional plea that reserved the right to seek appellate review of the ruling on his motion to suppress. But we are without the benefit of case law on what qualifies as "in the interest of justice" under this statute. On these facts, without resistance from the State, we determine the reservation of the right to challenge the preemption of the city ordinances by state law satisfies the statute, resulting in our court having jurisdiction to hear Sampson's appeal.

series of state statutes.  In the alternative, he argues that a publication in the *Blue Grass Bugle*, a local newsletter, warrants the application of the rule of lenity.

A.  Preemption of the Blue Grass City Ordinance

Sampson argues the city ordinances on UTVs, which served as the basis for the stop, were preempted by a combination of several sections of Iowa Code chapter 321I.  Sampson highlights sections 321I.10, 321I.13, 321I.14, and 321I.30.  Sampson refers to section 321I.30 as "the preemption statute."

Article III, section 38A of the Iowa Constitution grants municipalities in Iowa home rule authority, but it makes clear that such power cannot conflict with the actions of the legislature: "Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly."  Because the actions of cities cannot be "inconsistent" with the laws of the legislature, conflicting city ordinances are preempted by state law.  *Goodell v. Humboldt Cnty.*, 575 N.W.2d 486, 492 (Iowa 1998).

There are three kinds of preemption.  *Id.* at 492–93.  The first is express preemption: "Express preemption occurs when the general assembly has specifically prohibited local action in an area."  *Id.* at 492.  The second and third types are both forms of implied preemption.  *See id.* at 493.  The first, "[w]hen an ordinance 'prohibits an act permitted by a statute, or permits an act prohibited by a statute,' the ordinance is considered inconsistent with state law and preempted."  *Id.* (quoting *City of Des Moines v. Gruen*, 457 N.W.2d 340, 342 (Iowa 1990)).  This is normally referred to as "conflict preemption."  *Seymour*, 755 N.W.2d at 539.  The

final kind of preemption, often called "field preemption," *id.*, occurs "when the legislature has 'cover[ed] a subject by statutes in such a manner as to demonstrate a legislative intention that the field is preempted by state law.'" *Goodell*, 575 N.W.2d at 493 (quoting *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983)). Sampson argues portions of all three apply to preempt the Blue Grass city ordinances concerning the operation of UTVs.

The Blue Grass city ordinance 10.90.100 as in effect at the time of the stop of Sampson's operation of the golf cart read: "UTVs may be operated on City streets only between sunrise and sunset." The version of Blue Grass city ordinance 10.90.70 in effect at the time of the stop read:

> A UTV operated upon city streets shall be equipped with at least the following:
> 1. A slow moving sign.
> 2. A bicycle safety flag, the top of which shall be a minimum of five feet (5') from ground level and a minimum of two feet (2') above the highest point of the UTV.
> 3. UTVs operated on City streets shall be equipped with a muffler, headlight, taillights located on the driver's or operator's side and adequate brakes to stop and hold the UTV in a stopped position.
> 4. UTVs operated on City streets shall be equipped with an adequate exhaust system.

Sampson argues the city ordinances are preempted by a combination of several of the sections in Iowa Code chapter 321I. Those sections include section 321I.10:

> 2. A registered all-terrain vehicle or off-road utility vehicle may be operated on an undivided two-lane primary highway that is not part of the interstate road system over the most direct and accessible route between any of the following locations:
> a. An all-terrain vehicle park or trail.
> b. A secondary road on which such vehicles are authorized to operate under subsection 3.
> c. A city street on which such vehicles are authorized to operate under subsection 4.
> d. The vehicle operator's residence.
> . . . .

4. A city may regulate the operation of registered all-terrain vehicles and off-road utility vehicles and may designate streets under the jurisdiction of the city within its corporate limits, and two-lane primary and secondary road extensions in the city, which may be used for the operation of such vehicles. In designating such streets, the city may authorize all-terrain vehicles and off-road utility vehicles to stop at service stations or convenience stores along a designated street. However, a city shall not charge a fee to operate a registered all-terrain vehicle or off-road utility vehicle within the city.

Section 321I.13: "Every all-terrain vehicle operated during the hours of darkness shall display a lighted headlight and taillight. Every all-terrain vehicle shall be equipped with brakes." Section 321I.14(1)(d): "A person shall not drive or operate an all-terrain vehicle. . . . Without a lighted headlight and taillight from sunset to sunrise and at such other times when conditions provide insufficient lighting to render clearly discernible persons and vehicles at a distance of five hundred feet ahead." And section 321I.30, which Sampson refers to as the "preemption statute" reads:

This chapter and other applicable laws of this state shall govern the operation, equipment, numbering, and all other matters relating to an all-terrain vehicle when the all-terrain vehicle is operated or maintained in this state. However, this chapter does not prevent the adoption of an ordinance or local law relating to the operation or equipment of all-terrain vehicles. The ordinances or local laws are operative only so long as they are not inconsistent with this chapter or the rules adopted by the commission.

Sampson argues the nighttime use regulations in sections 321I.13 and .14, the city street authorizations in section 321I.10, and the restriction on "inconsistent" ordinances in section 321I.30 conflict with and preempt the Blue Grass city ordinances. He argues elements of both express and implied preemption apply.

In making an express-preemption claim, Sampson relies on the placement of "inconsistent" in the statute, which he argues is a higher standard than an

"irreconcilable conflict." But section 321I.10 states, "A city may regulate the operation of registered all-terrain vehicles and off-road utility vehicles." And in interpreting a statute "we consider the language's relationship to other provisions of the same statute and other provisions of related statutes." *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021). There is no broad express preemption when the chapter explicitly allows for municipal regulation. Further, "inconsistent" is used in both section 321I.30 and article III of the Iowa Constitution. We see no reason that in the context of preemption, such has a stricter meaning in Iowa Code section 321I.30 than in article III, section 38A of the Iowa Constitution. *See* Iowa Const. art. III, § 38A; Iowa Code § 321I.30.

Finding no express preemption, we turn to Sampson's implied-preemption arguments. Implied preemption is a difficult standard to meet considering "we presume that the municipal ordinance is valid." *Seymour*, 755 N.W.2d at 539. And "[w]e strive to interpret state law and municipal law in a manner that renders them harmonious." *Livingood v. City of Des Moines*, 991 N.W.2d 733, 743 (Iowa 2023). Ultimately, "[w]e will not find an ordinance in conflict with state law unless the ordinance is 'irreconcilable' with state law." *Id.* The state statutes and city ordinances are not irreconcilable and can all be given effect. For there to be implied preemption by conflict, "the conflict must be obvious, unavoidable, and not a matter of reasonable debate." *Seymour*, 755 N.W.2d at 539. Such is not the case here.

The city ordinances at issue prohibit driving a UTV between sunset and sunrise and make the display of a safety flag on a UTV mandatory. The ordinances set standards for driving UTVs on city streets, allowed under section 321I.10. *See*

Iowa Code § 321I.10(4) ("A city may regulate the operation of registered all-terrain vehicles and off-road utility vehicles and may designate streets under the jurisdiction of the city within its corporate limits."). Further, of the statutes Sampson cites, only sections 321I.13 and 321I.14 reference driving a UTV at night or equipment standards. These sections set out equipment standards for UTVs when driven at night, but they do not specifically authorize UTVs to be driven at night. A conflict between the ordinances and these statutes is not obvious and unavoidable, and there is a harmonious interpretation. *Livingood*, 991 N.W.2d at 743. The state statutes set out minimum requirements if a UTV is driven at night, but it does not require that driving at night be permitted. The statutes do not prevent a city from imposing more stringent requirements or even barring nighttime driving.

As to field preemption, which Sampson appears to address concurrently with his claim of conflict preemption, section 321I.10 specifically allowing city regulation of UTVs makes any claim of a "clear expression of legislative intent to preempt a field" unpersuasive. *See Seymour*, 755 N.W.2d at 539. Sampson argues that allowing cities to maintain their own UTV regulations creates unnecessary burdens on drivers traveling from city to city. We consider:

> Field preemption is a narrow doctrine that cannot be enlarged by judicial policy preferences. In determining the applicability of field preemption, this court does not entertain arguments that statewide regulation is preferable to local regulation or vice versa, but focuses solely on legislative intent as demonstrated through the language and structure of a statute.

*Id.* Given the above, we determine Sampson's argument on field preemption to be unconvincing.

The UTV statutes in chapter 321I do not act to preempt the Blue Grass ordinances. None of these statutes state that they preempt city ordinances, none conflict with the city ordinances, and none show an intent to preempt the field of UTV regulation.

B. Rule of Lenity

Sampson also raises a "rule of lenity" argument based on a publication in the *Blue Grass Bugle* shortly before his arrest. He asserts a publication in the *Blue Grass Bugle* announced that a new state law allowed UTVs to be driven "day or night." Sampson asserts the motion to suppress should have been granted because of the unfairness created by the publication and the conflict between the state statutes and city ordinances.

Sampson makes the rule-of-lenity argument for the first time on appeal, and thus it has not been preserved for our review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Because it has not been preserved, we do not address Sampson's rule of lenity argument.[3]

**IV. Conclusion**

There is no preemption of the Blue Grass ordinances by any of the statutes cited by Sampson. *See Livingood*, 991 N.W.2d at 743. The statutes and

---

[3] Even if we were to consider the rule-of-lenity argument preserved for our review, we would not find such applicable here, as the rule of lenity requires that ambiguous statutes imposing criminal liability be construed for the defendant. *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011). As recited above, we find no ambiguity in the statutes. And Sampson argues a publication in a local newsletter created the ambiguity, not a statute.

ordinances can be reconciled, and therefore we do not find preemption. *See id.* The district court appropriately denied Sampson's motion to suppress. Accordingly, we affirm.

**AFFIRMED.**