# IN THE COURT OF APPEALS OF IOWA

No. 23-1548
Filed February 5, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LIMA KHAIRI MOHAMMAD YOUNES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Jason A. Burns,

Judge.


        A mother convicted for aiding and abetting her son's flight to evade

prosecution challenges the sufficiency of the evidence supporting her conviction,

in addition to other claims. **AFFIRMED.**


        Thomas M. McIntee, Williamsburg, for appellant.

        Brenna Bird, Attorney General, and David Banta, Assistant Attorney

General, for appellee.


        Considered by Buller, P.J., Sandy, J., and Telleen, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**TELLEEN, Senior Judge.**

In May 2022, the State charged Ali Younes—the 18-year-old son of Lima and Alfred Younes—with attempted murder and other felonies in connection with a strangling in Johnson County. Ali posted bond and was released to home confinement at his parents' residence in Sutherland, Iowa. Ten days before trial, he cut off his ankle monitor and boarded a plane to Amman, Jordan. A jury found Lima Younes guilty of aiding and abetting her son's flight from prosecution. Lima now appeals, challenging the sufficiency of the evidence.

## I. Background

On May 6, 2023, just before 9:00 a.m., Ali Younes's probation officer received a tamper alert from Ali's GPS ankle monitor. After failing to reach Ali, she attempted to contact Lima and Alfred, with whom Ali had been living while on pre-trial release. No one responded to the calls. And when a sheriff's deputy visited the Younes' house, nobody answered the door. Law enforcement began to search for Ali.

Using its onboard GPS system, police traced the Younes family car to a dealership in Omaha, Nebraska. The manager explained that Lima and Alfred had visited the dealership three days earlier and sold the car for roughly $21,000 in proceeds. A receipt admitted at trial identified Alfred as the "customer," but it listed Lima as one of the vehicle's titleholders. The check was made payable to both Lima and Alfred. Bank records later obtained by police show that Alfred cashed the check through the couple's shared account one day after the sale.

The Younes' whereabouts remained unknown until after 6:00 p.m., when Lima and Alfred finally returned the probation officer's calls. Lima told the

probation officer that she and Alfred were in Davenport and that they had left Ali at home.  Alfred alleged Ali was having a problem with his phone.  The couple promised to update the probation officer when they made it back from Davenport.  But when police tracked Alfred's phone using cell tower data, they learned Lima and Alfred were nowhere near Davenport.  They were in northern Illinois, traveling westbound toward Dubuque.

Investigators coordinated with Dubuque police to search for a white rental minivan Alfred had recently driven to work.  The vehicle was stopped shortly thereafter.  Lima, Alfred, and their daughter were inside.  Body camera footage admitted at trial captured Lima's statements during the stop.  She told the officer that the Younes family was on its way back from the O'Hare International Airport in Chicago, where they had dropped off her mother for a flight to Canada.  When asked about Ali, Lima told the officer he had stayed home.  Police searched the minivan.  Finding no sign of Ali, they let the family go.

Back in Sutherland, officers executed a search warrant at the Younes residence.  They entered the house close to midnight.  Ali was not there.  Officers located his ankle monitor, which had been cut at the strap, as well as a lockbox containing passports and passport photos for each of the family members.

Two days after Ali's disappearance, Lima and Alfred met with their daughter's high school principal to discuss whether she could finish high school online.  The principal testified that the Younes family informed her of their plan to leave the country later that week.  Alfred did most of the talking.  On May 9, two deposits totaling $60,000 were credited to Alfred and Lima's shared bank account.

These funds were later determined to be the proceeds from high-interest personal loans obtained by Alfred.

Meanwhile, federal authorities informed police that Ali had boarded a flight to Amman, Jordan at O'Hare International Airport on May 6. He traveled in a seat adjacent to his grandmother, Wafa Najim, using tickets purchased by credit card less than one week earlier. Security camera images admitted at trial show Ali navigating the airport alongside an older woman in a hijab.

Through a constellation of vehicle data and surveillance footage, police reconstructed the Younes family's path on May 6. Their rented minivan was filmed by a gas station camera leaving their Sutherland driveway just after 9:00 a.m. It traced a roundabout journey through Minnesota and Wisconsin before turning south toward Illinois, where it was photographed entering and exiting an airport parking lot at O'Hare. It then made a due-west return to Sutherland via Dubuque. Images from an Illinois toll booth captured Lima riding in the front passenger seat of the vehicle as Alfred drove them home.

Police arrested Alfred in Omaha on May 9. He was preparing to board a flight to Jordan, carrying over $16,000 in cash. Lima was arrested as she returned from taking Alfred to the airport. The State charged both parents with aiding and abetting Ali's flight from felony prosecution in violation of Iowa Code section 719.4(4) (2023).[1] At trial, Lima moved for judgment of acquittal, objecting to the venue of her trial and arguing the evidence was insufficient to support her

---

[1] Alfred pled guilty to his charge, and his sentence was affirmed on a separate appeal. *See State v. Younes*, No. 23-1950, 2024 WL 4615753, at *1–2 (Iowa Ct. App. Oct. 30, 2024).

conviction as an aider and abettor. The district court denied the motion, and the jury found her guilty. Lima received an indeterminate sentence of five years' imprisonment. She now appeals.

## II.     Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). The jury's verdict must stand if it is supported by substantial evidence. *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022). We view the evidence "in the light most favorable to the State," asking whether it could "convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Lima does not challenge the State's proof as to the elements of Ali's principal offense. However, she argues the record is insufficient to support her liability as an aider and abettor.

The district court properly instructed the jury that aiding and abetting means to "knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed." *Accord State v. Cook*, 996 N.W.2d 703, 708–09 (Iowa 2023). Mere awareness of the crime or proximity to the scene is not enough to convict on an aiding and abetting theory. *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). That said, a defendant's participation "can be inferred from circumstantial evidence including presence, companionship and conduct before and after the offense is committed." *State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984) (cleaned up).

According to Lima, the State failed to show she was anything more than a bystander in her son's offense. She asserts there is no evidence to suggest she cut Ali's ankle monitor, purchased his airline ticket, or drove the minivan to O'Hare. Lima is right about those aspects of the record. However, the State was not required to prove she personally carried out all—or even any—of the steps that facilitated Ali's escape. It needed only to show that Lima "actively participat[ed]" in those acts or "encouraged [them] in some way." *Brimmer*, 983 N.W.2d at 248. Viewing the record in the light most favorable to the verdict, we find substantial proof that she did.

Ali's flight to Jordan was a family effort. Lima was not merely a passenger in a van. On May 3, she traveled to Omaha with Alfred to sell their jointly owned vehicle. The check was made out to both parents and cashed out of their shared account. A rational juror could infer that Lima and Alfred agreed to use these funds—along with the loans Alfred would later collect—to restart their family's life in Jordan. Lima's participation continued on May 6, when she told multiple authorities searching for Ali that he remained at home in Sutherland. The jury was entitled to conclude these statements were lies intended to stop police from apprehending Ali before he boarded his plane. *See State v. Hearn*, 797 N.W.2d 577, 581 (Iowa 2011) (citing a defendant's interference with a police pursuit as one fact supporting his conviction for aiding and abetting a carjacking); *State v. Friedley*, No. 01-1580, 2003 WL 1523343, at *4 (Iowa Ct. App. Mar. 26, 2003) (finding defendant's misrepresentations to a loan officer demonstrated his knowledge of corporate theft and supported his conviction for aiding and abetting).

Lima contends there was "[n]o evidence Ali was in the van which transported Wafa" to the airport and so the jury could not rationally conclude she lied to police about her son's whereabouts. We disagree. Although Ali was not photographed with the white minivan, the circumstantial proof placing him inside the vehicle is more than substantial. *See Brimmer*, 983 N.W.2d at 256 (noting direct and circumstantial evidence are equally probative of an aider and abettor's involvement). The minivan was filmed leaving the Younes' driveway just minutes after Ali's probation officer received a tamper alert from his ankle monitor. Some nine hours later, security footage recorded Ali entering the airport at the same time as his grandmother. And the minivan's circuitous route through adjacent states—which Lima and Alfred did not follow on their return trip from Chicago—is consistent with a plan to keep a wanted passenger beyond the reach of Iowa authorities.

Lima also argues that Alfred was the primary accomplice in Ali's escape and that the jury improperly imputed Alfred's conduct to her. We are mindful of the evidence of Alfred's greater culpability in the Younes family's scheme. However, as the district court correctly instructed the jury, "[t]he guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt." Iowa Code § 703.1. For the reasons discussed, substantial evidence of Lima's own participation in Ali's offense supports her conviction.

### III.    Lima's Other Claims

Lima's appellate brief raises several other issues, none of which are properly before us. First, she challenges the venue of her Johnson County trial—an argument first raised in her attorney's oral motion for acquittal at the close of

the State's evidence. The district court found that objection waived, and we agree. *See* Iowa Code § 803.2(3) ("All objections to venue are waived by a defendant unless the defendant objects thereto and secures a ruling by the trial court on a pretrial motion for change of venue."); *State v. Smith*, 585 N.W.2d 753, 754 (Iowa Ct. App. 1998) ("Venue is not a jurisdictional issue. A defendant must object to improper venue before trial or the issue is waived.").

Second, Lima argues that she is entitled to a new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(7) because the jury's verdict is contrary to the weight of the evidence. We review that claim under a different set of standards than a sufficiency-of-the-evidence challenge. *See State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). But as Lima concedes, she never asked the district court for a new trial based on the weight of the evidence. So, the issue is not preserved for our review. *See State v. Kucharo*, No. 22-1881, 2024 WL 2842307, at *1 n.1 (Iowa Ct. App. June 5, 2024); *State v. Kramer*, No. 16-2048, 2018 WL 346454, at *7 (Iowa Ct. App. Jan. 10, 2018).

Finally, Lima argues that her conviction should be vacated because she received ineffective assistance from trial counsel due to counsel's failure to seek suppression of her statements to Dubuque police, among other asserted deficiencies. The law is clear that such a claim must now await postconviction proceedings. *See* Iowa Code § 814.7 (stating an ineffective-assistance-of-counsel claim "shall not be decided on direct appeal from the criminal proceedings"); *accord State v. Tucker*, 982 N.W.2d 645, 653 (Iowa 2022). We decline to consider her ineffective-assistance arguments.

**IV.     Conclusion**

Substantial evidence supports the jury's verdict finding Lima Younes guilty for aiding and abetting her son's flight to avoid prosecution.  We reject her remaining claims of error as waived, premature, or unpreserved, and we therefore affirm her conviction and sentence.

**AFFIRMED.**